**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK P. GALAYDA and | : | |
| JACQUELINE A.  SANTONE-GALAYDA, | : | Civil Action No. 10-1065 (FLW) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | **OPINION** |
| WACHOVIA MORTGAGE, FSB; MARKET | : | |
| YARD MORTGAGE; CRAIG FRANKEL; | : | |
| JOHN DOES NOS. 1-12; and | : | |
| ABC CORPORATIONS NOS. 1-10; | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, United States District Judge:**

Presently before the Court are motions by Defendants Wachovia Mortgage, FSB ("Wachovia"), Market Yard Mortgage ("Market Yard"), Craig Frankel ("Frankel"), and Giant Title Agency ("Giant Title") (collectively referred to as "Defendants") for judgment on the pleadings pursuant to Fed .R. Civ. P. 12(c).[1]  Defendants seek to dismiss Plaintiffs Mark P. Galayda and Jacqueline A. Santone-Galayda's (collectively referred to as "Plaintiffs") fifteen-count Complaint stemming from a home mortgage transaction between Plaintiffs and Defendants.  Each Defendant asserts the same basis for seeking judgment on all counts; specifically, Defendants argue that Plaintiffs have failed to state any claims for which relief may

---

[1]  As discussed *infra* in Section I, the Court is converting Market Yard, Frankel and Giant Title's motions into motions for summary judgment, pursuant to Fed. R. Civ. P. 12(d).

1

be granted.  For reasons that follow, the Court will dismiss Plaintiffs' claims against all
Defendants.

## I.      Factual Background

Plaintiffs were the owners of the residential property located at 212 Stuart Street,
Howell, New Jersey 07731, Block 144, Lot 23.02.  Compl. ¶ 1. At some point in 2007, Plaintiffs
determined to subdivide their property into two parcels, build a new house on the new parcel and
sell their old house.  Certification of Jacqueline A Galayda ("Galayda Cert.") ¶ 3.  In April 2007,
Plaintiffs were approved for and executed a construction loan for the 212 Stuart Street property.
Id. ¶ 5.   Thereafter, in early 2008, Plaintiffs met with Craig Frankel, a broker for Market Yard,
about "getting out of the construction loan" and refinancing their existing home mortgage loan.
Galayda Cert.  Id. ¶ 7.   In addition, Plaintiffs allege that they advised Frankel that they needed
funds to complete construction on the 212 Stuart Street property as well as additional funds to
help with the monthly mortgage payments.  Id. ¶ 8.  Based on preliminary information provided
by Plaintiffs, and prior to the performance of any appraisals, Market Yard issued preliminary
disclosures to Plaintiffs.  Frankel Aff. ¶ 3.   According to the Galaydas, Frankel advised Plaintiffs
that they could expect to receive $30,000 to $40,000 from the refinancing.  Galayda Cert., ¶ 9.

Subsequently,  Frankel obtained a lender for Plaintiffs, Wachovia, and in March 2008,
Plaintiffs applied to Wachovia to refinance their mortgage.  Id. ¶ 14; Frankel Aff. ¶ 4.  Plaintiffs
certified that all of the information provided in connection with the loan application was true and
correct.  Certification of Kellie A. Lavery in Support of Wachovia's Motion for Judgment on the
Pleadings ("Lavery Cert."), Ex. A.   Moreover, Plaintiffs acknowledged that they were provided
with all of the requisite disclosures in connection with the loan application.  Lavery Cert., Ex. B.

Specifically, Plaintiff Mark Galayda acknowledged that he received information pertaining to the 3 Year Fixed Rate Pick-A-Payment Loan and Deferred Interest Acknowledgment which describe the features of the Loan that Plaintiffs were considering.  Lavery Cert., Exs. C, J.

On March 20, 2008, Wachovia issued a Commitment Letter to Plaintiffs which provided that Plaintiff was approved for a "3 Year Fixed Rate Pick-a-Payment Loan" in the amount of $455,000 with an initial interest rate of 7.550%.   Lavery Cert., Ex. D; Compl. ¶ 17.   Moreover, the Letter provided that the loan was a "modified interest rate" loan and that the interest would be adjusted on a monthly basis beginning on the due date of the 36th regularly scheduled payment. Lavery Cert., Ex. D.

Plaintiffs decided to pursue the refinance with Wachovia.  Lavery Cert., Ex. H. Sometime prior to closing, Plaintiffs allege that they discovered that they were only to receive about $8,000 from the refinancing with Wachovia.  Galayda Cert. ¶ 11.   Because this was less than they expected, Plaintiffs allege that Frankel promised that he would secure an additional loan from Sun Bank to enable Plaintiffs to complete construction on their property.  Galayda Cert. ¶ 12.

Plaintiffs closed on the adjustable rate mortgage loan with Wachovia on March 27, 2008. Lavery Cert., Ex. H.   Giant Title provided the title insurance for the transaction.  Compl. ¶ 5. At the closing, Plaintiffs were provided with all of the disclosures required by law.  Lavery Cert., Exs. E, F, G.  Indeed, each of the Plaintiffs signed the Truth-in-Lending Disclosure Statement and each of the Plaintiffs acknowledged their receipt of two copies of the Notice of Right to Cancel.  Lavery Cert., Exs. F, G.  Moreover, Plaintiff Mark Galayda chose an initial monthly payment of $1,980.19 and acknowledged that his initial monthly payment would be $3,154.58

with $1,980.10 applied to the mortgage, and $1,174.39 to be deposited in an escrow account for

taxes and insurance. Lavery Cert., Exs. L & M. In addition, Plaintiff Mark Galayda executed a

Note to secure the sum of $455,000 to Wachovia Mortgage; the loan was secured by a Mortgage

on the Plaintiffs' property. Lavery Cert., Exs. H,I.

Shortly thereafter, Plaintiffs discovered that the additional loan from Sun Bank that

Frankel promised had been denied. Galayda Cert. ¶ 15. As a result, Frankel himself offered

Plaintiffs $15,000 out of his own funds which they could use for their construction costs.

Galayda Cert. ¶¶ 17,18; Frankel Aff. ¶¶ 9, 12. In exchange for accepting the $15,000 from

Frankel, on May 22, 2008, Plaintiffs executed a General Release Form releasing Market Yard

and Frankel from any liability concerning the 212 Stuart Street property. Frankel Aff., Ex. A;

Galayda Cert., ¶¶ 18-21.

Sometime thereafter, Plaintiffs defaulted on the loan with Wachovia by failing to make

payments due under the terms of the mortgage. As a result, Wachovia filed a foreclosure action

against Plaintiffs on December 28, 2009 in state court. Wachovia's Br. at 3. Subsequently, on

January 6, 2010, Plaintiffs filed the instant Complaint against Wachovia, Market Yard, Frankel

and others in the Superior Court of New Jersey, Monmouth County, Law Division. The

Complaint sets forth 15 different causes of action including: violations of the federal Truth-in-

Lending Act ("TILA); violations of the New Jersey Consumer Fraud Act ("NJCFA"); violations

of the New Jersey Racketeer Influenced and Corrupt Organization (NJ RICO) statutes; common-

law fraud; unconscionability; negligent supervision; unjust enrichment; violations of the federal

Real Estate Settlement Practices Act ("RESPA"); respondeat superior liability; breach of

fiduciary duty; breach of the duty of good faith and fair dealing; violations of the New Jersey

4

Law Against Discrimination ("NJ LAD" or "LAD"); violations of the New Jersey Home Ownership Security Act ("NJ HOSA" or "HOSA"); and violations of the federal Home Ownership and Equity Protection Act ("HOEPA").

At the outset, the Court is compelled to note the blunderbuss nature of Plaintiffs' Complaint. Indeed, a thorough review of the Complaint suggests that Plaintiffs pieced together the instant Complaint from complaints filed in other matters. For example, the Court notes that not only did Plaintiffs include causes of action that have seemingly nothing to do with the substance of their dispute with Defendants including, for example, a claim under the NJ LAD, but a number of Plaintiffs' allegations have nothing to do with the facts as they relate to the transaction between the Plaintiffs and these Defendants. See, e.g., Compl. ¶ 35 ("The defendants, plaintiff, John Does and ABC Corporations knew or should have known that plaintiffs lacked the legal capacity to enter into this mortgage loan contract."). Moreover, a large number of the allegations refer to the unspecified actions of unspecified John Doe and ABC Corp. Defendants. See, e.g., Compl. ¶¶ 34, 36, 43. These types of allegations are entirely irrelevant and singularly unhelpful to the Court's review, let alone entirely non-compliant with the Supreme Court's pleading standards.

That said, the Court understands, in relevant part, that Plaintiffs allege that the mortgage Plaintiffs received had "higher interest rates and/or other terms that differed from what they were promised" and that Defendants failed to make proper disclosures under TILA and HOEPA. Compl. ¶¶ 9, 14-16, 20, 23-26. Moreover, Plaintiffs allege that Frankel incorporated "certain falsehoods" into the loan application "including inflation of income and intentionally failing to verify third-party plaintiff income; misstated and/or manipulated data to hide the actual cost of

credit; and concealed the fact that it was a 'high cost' loan that required additional disclosures that were never made." Id. ¶ 13.[2]  In addition, Plaintiffs allege that Defendants "made fraudulent representations about the terms of the loan to plaintiffs to induce them to refinance the mortgage on their house." Id. ¶ 31.

Wachovia filed a Notice of Removal on February 24, 2010 and removed this matter to the United States District Court for the District of New Jersey.   Wachovia answered the Complaint on March 17, 2010 and filed a Motion for Judgment on the Pleadings on April 19, 2010.   Giant Title answered the Complaint on March 24, 2010 and filed a Motion for Judgment on the Pleadings on April 22, 2010.  Market Yard answered the Complaint on April 20, 2010 and filed a Motion for Judgment on the Pleadings on May 7, 2010.[3]

By letter Order dated October 5, 2010, the Court advised Market Yard, Frankel, Giant Title and Plaintiffs, that, in light of the extraneous factual material filed in their motions as well as in Plaintiffs' response to these motions, the Court would consider Market Yard, Frankel and Giant Title's  motions for judgment on the pleadings as those for summary judgment pursuant to Fed. R. Civ. P. 12(d).  The Court provided the parties ten days to submit additional material pertinent to the summary judgment motions.  No additional material was received.

---

[2]The Court notes that this is one of numerous examples where Plaintiffs' counsel inaccurately refers to a party or entity; in light of the fact that there is no third-party plaintiff in this case, it is clear to the Court that Plaintiffs intended to refer to Plaintiffs themselves, and not to an non-existent third party plaintiff.

[3]   The Court notes that Defendants Giant Title, Market Yard and Frankel adopt, and largely rely upon, Wachovia's brief in support of their Motions for Judgment on the Pleadings.

## II.      Standards

### i. Motion for Judgment on the Pleadings

The standard that a court applies on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6).  Turbe v. Government of Virgin Islands, 938 F.2d 427 (3d Cir.1991); see also Spruill v. Gillis, 372 F.3d 218, 223 n. 2 (3d Cir.2004).   When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that <u>Twombly</u> standards apply to all motions to dismiss, the Supreme Court recently explained the following principles.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S.Ct. 1937, 1949  (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Id.</u> at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully."  <u>Iqbal</u>, 129 S.Ct. At 1949 (quoting <u>Twombly</u>, 550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  <u>Fowler</u>, 578 F.3d at 211.  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).   Importantly, "a <u>court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document</u>. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  <u>Id.</u> (emphasis added). Accordingly, the Court has considered the documents that form the basis of Plaintiffs' Complaint and that were attached to the Lavery Certification in support of Wachovia's Motion for Judgment on the Pleadings.

**ii. Summary Judgment**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there

is some metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at

586). Moreover, the non-moving party must present "more than a scintilla of evidence showing

that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d

Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's

role is not to evaluate the evidence and decide the truth of the matter, but to determine whether

there is a genuine issue for trial. Anderson, 477 U.S. at 249. A non-moving party cannot defeat

summary judgment simply by asserting that certain evidence submitted by the moving party is

not credible. S.E.C. v. Antar, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

## III.    The Complaint

### A.  Federal Claims: Count I (Violations of TILA), IX (Violations of RESPA), and XV (Violations of HOEPA)

In the Complaint, Plaintiffs assert that Defendants' actions violated TILA (Count I),

RESPA (Count IX), and HOEPA (Count XV). In response, Defendants contend that Plaintiffs'

claims are barred by the statute of limitations. The Court agrees.

Damage claims under TILA, HOEPA and RESPA are generally subject to one-year

statutes of limitation beginning from the consummation of the loan transaction. See 15 U.S.C. §

1640(e) (one year statute of limitation for damage claims pursuant to TILA and HOEPA) and 12

U.S.C. § 2614 (one year statute of limitation for damage claims pursuant to RESPA). In the

instant matter, Plaintiffs' closing occurred on March 27, 2008. Thus, Plaintiffs had until March

10

27, 2009, to bring an action under these Acts.  Plaintiffs did not file a Complaint against

Defendants until January 6, 2010, nearly a year after the statute of limitations had run on each of

the above claims.  Thus, Plaintiff's causes of action under TILA, HOEPA and RESPA are barred

by the statute of limitations.

However, Plaintiffs argue in this motion that the statute of limitations for their TILA,

HOPEA and RESPA claims should be equitably tolled.  Equitable tolling freezes "the statute of

limitations from running when the date on which the claim accrued has already passed."  Lake v.

Arnold, 232 F.3d 360, 370 (3d Cir.2000).  The doctrine permits a court "to extend a statute of

limitations on a case-by-case basis to prevent inequity."  Colletti v. N.J. Transit Corp., 2002 WL

1769006 (3d. Cir.2002)(quoting Warren v. Garvin, 219 F.3d 111, 113 (2d Cir.2000)).  Although

the United States Court of Appeals for the Third Circuit cautions that the doctrine of equitable

tolling must be used sparingly "to guard against possible misuse,"  Seitzinger v. Reading Hosp.

& Med. Ctr., 165 F.3d 236, 240 (3d Cir.1999), this caution should not enfeeble the primary

function of the doctrine, which is to "prevent a party from profiting from its own wrongdoing."

Lake, 232 F.3d at 370 (citing Oshiyer v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1388

(3d Cir.1994).

Equitable tolling may be appropriate in three scenarios: (1) when the defendant has

actively misled the plaintiff respecting the facts which comprise the plaintiff's cause of action; (2)

when the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3)

when the plaintiff has timely asserted her rights in the wrong forum. U.S. v. Midgley, 142 F.3d

174, 179 (3d Cir.1998) (quoting Kocian v. Getty Refining & Mktg. Co., 707 F.2d 748, 753 (3d

Cir.1983)).  Equitable tolling is therefore "appropriate in order to avoid unjust results where there

has been fraudulent concealment." <u>Solar v. Millenium Fin., Inc.</u>, No. CIV.A. 01-CV-4327, 2002 WL 1019047, at *2 (E.D.Pa.2002).  Furthermore, to meet the standard of equitable tolling, a plaintiff must demonstrate that she "exercised reasonable diligence in investigating and bringing the claims."  <u>Miller v. New Jersey Dep't of Corrections</u>, 145 F.3d 616, 618-19 (3d Cir.1998)

In the instant motion, Plaintiffs argue that the Court should equitably toll the statute of limitations for their RESPA, HOEPA and TILA claims because Plaintiffs did not become aware of the allegedly "illicit nature of their mortgage loan until December 2009,"  Pl's Opp. Br. at 6, and that the statute of limitations should not run until the <u>discovery</u> of the alleged fraud.  The Court does not agree.

First, Plaintiffs have not alleged that Defendants actively misled or prevented Plaintiffs from asserting their claims "in some extraordinary way."   Other than the unsupported assertion that Plaintiffs did not discover the allegedly illicit nature of the mortgage until December 2009, Plaintiffs have provided no reason for their untimely discovery of the "illicit nature of their mortgage" nor have they alleged anything that would connect Defendants to their allegedly untimely discovery of that fact.  Moreover, Plaintiffs have not set forth any reason why they did not know, or could not have discovered, the alleged violations within the one-year statue of limitations prescribed by law.  Indeed, the Complaint cites the loan documents signed at the March 27, 2008 closing as the basis for all their claims against defendants,  Compl. ¶ 17, and the Court finds that there is no issue of material fact as to whether Plaintiffs were provided with the proper material disclosures and rescission forms as Plaintiffs signed the acknowledgement of receipt for the Notice of Right to Cancel and executed an acknowledgement of receipt of all loan documents. Lavery Cert., Exs. E,F,G.

In addition, the Court notes that the mistaken forum exception does not apply because Plaintiffs did not timely assert their claims in the first instance, let alone assert them in the wrong forum.  Finally, Plaintiffs have not mentioned, let alone demonstrated, that they exercised reasonable diligence in investigating and bringing their claims so as to permit the Court to toll the statute of limitations.  Miller, 145 F.3d at 618-619.  Because Plaintiffs have entirely failed to demonstrate any reason for tolling, the Court finds that Plaintiffs are barred from asserting their claims under TILA, RESPA and HOEPA as set forth in Counts I, IX, and XV of their Complaint.[4]

### B.  Count II, III & IV – Plaintiff's Fraud Claims

In Counts II, III and IV of the Complaint, Plaintiffs allege causes of action under the New Jersey Consumer Fraud Act, New Jersey RICO and common law fraud.   Because each of these claims are fraud-based, Plaintiffs are required to plead these claims with specificity under Rule 9.

---

[4]   Although Plaintiffs additionally argue that their right of rescission regarding their TILA claim cannot be dismissed because the statute of limitations on the right to rescission does not expire until three years after the date of consummation of the loan transaction under 15 U.S.C. § 1635(f), Plaintiffs are mistaken.  Section 1635(f) is restricted by § 1635(a) which states that in a consumer credit transaction in which a security interest is "retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later."  15 U.S.C. § 1635(a)(emphasis added); see also Deutsche Bank National Trust Co., v. Lacapria, Civ. A. No. 08-2174 (JAP), 2010 WL 715617, at *3-4 (dismissing TILA claims arising out of a mortgage refinance).  Moreover, to the extent that Plaintiffs argue that Defendants did not provide accurate disclosures and rescission forms and, as a result, that the three day statute of limitations for rescission should be extended pursuant to 12 C.F.R. 226.23(a)(3), the Court finds that there is no issue of material fact as to whether Plaintiffs were provided with the Notices of Right to Cancel or Truth in Lending Disclosures.  Indeed, based on exhibits attached by Defendants to their Motion, Plaintiffs clearly acknowledged receipt of both the Notices of Right to Cancel and Truth in Lending Disclosures.  Lavery Cert., Exs. F,G.  Thus, Plaintiff's claim that their TILA action is still viable fails as a matter of law.

13

Fed. R. Civ. P. 9(b)("[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." ); Construcciones Haus Soceidad v. Kennedy Funding Inc., Civil Action No. 07-cv-0392, 2008 WL 1882857, at * 5 (D.N.J. April 24, 2008)("To properly plead a NJRICO claim asserting a fraudulent predicate act, a party must comply with Rule 9(b), which requires that such allegations be pled with particularity.").

In Frederico v. Home Depot, 507 F.3d 188 (3d Cir.2007), the Third Circuit elucidated Rule 9's heightened pleading standard: "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. at 200 (internal citations omitted). Indeed, the Third Circuit has advised that pursuant to Rule 9(b), at a minimum, a plaintiff must support his/her allegations of fraud with all the essential factual background that would accompany " 'the first paragraph of any newspaper story'-that is, the 'who what, when, where and how' of the events at issue." In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir.2006)(citations omitted). A complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir.1998) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)"). This, Plaintiffs have failed to do.

Initially, the Court notes that Plaintiffs' fraud-based claims lack any specificity whatsoever and are, instead, unsupported legal conclusions upon which this Court need not rely.

14

As discussed above, the Complaint asserts numerous unspecified allegations against John Does and ABC Corps. which are not cognizable in claims for fraud.  Moreover, Plaintiffs' claim under NJCFA merely alleges that "[t]he defendants . . . made false promises, misrepresentations to and on behalf of plaintiffs concerning the material terms of the subject mortgage contract(s).  To wit, they include but are not limited to, false promises and misrepresentations about the amount of monthly payments; and the costs of financing."  Compl. ¶ 68.   However, Plaintiffs have not identified which of the Defendants made the statements, what the statements were or how these alleged statements were false or misleading.  Similarly, Plaintiffs' common law fraud claim provides that "the actions of defendants constitute common law fraud. The misrepresentations made by the defendants caused plaintiffs to enter into the mortgage transactions."  Compl.¶ 86.  However, Plaintiffs do not identify the content of the statements nor do they identify which Defendants allegedly made the statements, or when the statements were made.   Finally, Plaintiff's NJ RICO claim fails to allege any specific action by any of the Defendants that relates to the facts set forth in the Complaint.   Because generalized and conclusory allegations of fraud do not meet the heightened pleading standard for fraud, and because Plaintiffs have not specified any conduct on the part of any of the Defendants that could give rise to a cognizable claim for fraud, violation of the CFA or violation of NJRICO, the Court will dismiss the fraud claims against all Defendants.

### D.  Count XIII - NJ LAD

In Count XIII of the Complaint, Plaintiffs allege that Defendants violated the NJ LAD. NJ LAD prohibits, in relevant part, "any person, bank, banking organization, mortgage company, insurance company or other financial institution, lender or credit institution involved in the

making or purchasing of any loan or extension of credit" from "discriminat[ing] against any person or group of persons because of race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, sex, gender identity or expression, affectional or sexual orientation, disability, familial status or nationality, in the granting, withholding, extending, modifying, renewing, or purchasing, or in the fixing of the rates, terms, conditions or provisions of any such loan, extension of credit or financial assistance or purchase thereof or in the extension of services in connection therewith."  N.J.S.A. § 10:5-12(i).

Initially, the Court notes that Plaintiffs' LAD claim is devoid of any allegations of discrimination.  Indeed, although the Complaint states that "LAD prohibits the discriminatory and retaliatory lending practices.  This prohibition includes disparate lending based on one's gender," Plaintiffs have alleged no facts that would suggest that any of the Defendants engaged in discriminatory or retaliatory lending practices or that the mortgage they received would be considered part of such a practice.  Indeed, nothing in the record describes how Defendants allegedly discriminated against Plaintiffs and there is no mention or description of any discriminatory actions taken by any of the Defendants against any of the Plaintiffs.   Plaintiffs' sole argument in support of their LAD claim is the unsupported conclusion that  "[t]he discriminatory act was the issuance of the mortgage loan."  Pl's Br. § III.  Moreover, other than the fact that one of the Plaintiffs is a woman, Plaintiffs have failed to identify the class of protected individuals to which they belong, nor have they identified the nature of the discriminatory act that occurred as a result of one of the Plaintiff Jacqueline Galayda's gender. This Count appears to be a prime example of Plaintiffs' having asserted a multitude of causes of action without consideration of the applicability of the claim to the Plaintiffs and the facts.

Because Plaintiffs have entirely failed to identify any allegedly discriminatory action that would violate the provisions of LAD, the Court finds that Plaintiffs have failed to state a claim for violation of LAD and this Count will be dismissed as to all Defendants.

### E.  Count XIV - NJ HOSA

Plaintiffs allege in Count XIV that Defendants violated the provisions of NJ HOSA.  In enacting HOSA, the NJ State Legislature found that "[a]busive mortgage lending has become an increasing problem in this State, exacerbating the loss of equity in homes and causing an increase in the number of foreclosures in recent years." N.J.S.A. § 46:10B-23(a).  HOSA was thus created to "address the problem of abusive mortgage lending in New Jersey in which a loan is equity-based not income-based." 29 N.J. Prac. § 2.5.

To qualify as a "high-cost home loan" under HOSA, the principal amount of the home loan must not exceed a certain amount, and "the terms of the loan [must] meet or exceed one or more of the thresholds as defined in this section."  N.J.S.A. § 46:10B-24. One such threshold is the "total points and fees threshold."  Id.  The total points and fees threshold means "that the total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points, exceed: ... 4.5% of the total loan amount if the total loan amount is $40,000 or more."  Id. (emphasis added).   The HOSA defines "total loan amount" as "the principal of the loan minus those points and fees ... that are included in the principal amount of the loan."  Id.

Defendants argue that because the Points and Fees on Plaintiff's Loan did not exceed the "Total Points and Fees Threshold," their loan did not qualify as a High-Cost Loan and is not governed by HOSA.  Specifically, Defendants contend that the total loan amount of Plaintiffs'

17

loan is $445,270 since the principal of the loan was $455,000 and Plaintiffs paid $9,730 in points and fees.  Thus, Defendants contend that Plaintiffs paid less than 2.2% of the total loan amount in points and fees, which does not meet or exceed 4.5% of the loan amount and does not, therefore, qualify as a "high cost home loan" under HOSA.

In response, Plaintiffs contend that their loan satisfies the points and fees threshold of the HOSA.  Pl's Opp. Br. at § IV.   Specifically, Plaintiffs argue that Defendants failed to account for the additional $9,100 Broker Fee paid to Mortgage Market Yard; thus, Plaintiffs argue that the total points and fees charged to the Plaintiffs was $23,000 which amounts to 5.05% of the loan and, therefore, that the loan is governed by HOSA.

First, the Court notes that Plaintiffs have not explained from where their calculation of $23,000 in points and fees arises.  Thus, the Court cannot determine whether Plaintiffs' calculation is accurate.  Moreover, on its face, the HUD Statement provides that the $9,100 Broker Fee was paid by the Lender to Market Yard and not by Plaintiffs.  In contrast to the HUD Statement, however, Plaintiffs contend that the Broker Fee was paid by the Galaydas,.  Because this Court must view the facts in favor of the non-moving party, Phillips, 515 F.3d at 233; Matsushita Elec. Indus. Co., 475 U.S. at 587, and because it is unclear from the face of the documents whether the Broker Fee was paid by the Plaintiffs or the Lender, the Court will consider, for the purposes of this motion, that the broker fee was paid by Plaintiffs.  Even so, adding the $9,730 in points and fees to the broker fee of $9,100, amounts to $18,830.  To qualify as a loan under HOSA, the total fees paid by Plaintiffs would have to be $19,627.65 or 4.5% of $436,170; here, the total fees paid by Plaintiffs were $18,830, substantially less than what is needed to qualify as a high cost loan under NJ HOSA.

However, even if Plaintiffs' loan was a high-cost loan under NJ HOSA, Plaintiffs have failed to set forth any facts to support their claim that the loan they received violated the provisions of NJ HOSA. Indeed, the Court notes that an examination of Plaintiffs' Complaint demonstrates that in Count XIV Plaintiffs have done nothing more than regurgitate the HOSA statute. Compare, e.g., Compl. ¶ 135(a) (alleging that Defendants financed "credit life, credit disability, credit unemployment or credit property insurance, or any other life or health insurance, or any payments directly or indirectly for any debt cancellation or suspension agreement or contract.") with N.J.S.A. § 46:10B-25 ("No creditor making a home loan shall finance, directly or indirectly, any credit life, credit disability, credit unemployment or credit property insurance, or any other life or health insurance, or any payments directly or indirectly for any debt cancellation or suspension agreement or contract.").

Further, not only are Plaintiffs' HOSA allegations entirely devoid of any factual allegations but, the Court notes that the substance of these allegations are contrary to the loan documents themselves. First, Plaintiffs contend that Defendants violated HOSA by financing "credit life, credit disability, credit unemployment or credit property insurance, or any other life or health insurance, or any payments directly or indirectly for any debt cancellation or suspension agreement or contract." Compl. ¶ 135(a). However, the HUD Statement demonstrates that there were no disbursements for any type of credit insurance, life or health insurance, or any other payments related to debt cancellation or suspension agreement. Lavery Cert., Ex. E; Pl's Opp. Br., Ex. D.

Moreover, although Plaintiffs assert that Defendants "[r]ecommended or encouraged default on an existing loan," Compl. ¶ 135(b), nowhere have Plaintiffs set forth any allegations

concerning discussions between themselves and any Defendants in which any of the Defendants recommended or encouraged default.

Further, Plaintiffs allege that Defendants charged a late payment fee in violation of N.J.S.A. § 10B-25.  Compl. ¶ 135(c).  Plaintiffs are wrong.  HOSA prohibits late fees in excess of 5% of the payment in default.  N.J.S.A. 10B-25(d)(1).  Plaintiffs' loan contained a late fee of "5% of my overdue payment of principal and interest."

Similarly, Plaintiffs allege that Defendants provided them with a loan that permitted Defendants " to accelerate their indebtedness at their sole discretion."  Compl. ¶ 135(d).   Again, Plaintiffs do not properly characterize their loan.  Specifically, under the terms of the Note and Mortgage, the lender had the right to accelerate indebtedness if the secured property was sold or transferred by Plaintiffs without the lender's prior written permission, Lavery Cert., Ex. H, or if Plaintiffs defaulted on payments.  Lavery Cert., Ex. I.

Finally, Plaintiffs allege that defendants violated HOSA by charging "a fee for informing or transmitting to any person the balance due to pay off a home loan or to provide a release upon prepayment."  Compl. ¶ 135(e).  However, the HUD Statement does not reflect any such disbursements. Lavery Cert., Ex. E; Pl's Opp. Br., Ex. D.

For all these reasons, the Court will dismiss the Count XIV of the Complaint against all Defendants.

### F.  Counts V, VI, VII, VIII, X, XI, XII - State Common Law Claims

The remainder of the Complaint asserts various common law claims allegedly stemming from Defendants' negligence, breach of contract, breach of fiduciary duty, and other allegedly unlawful activities.  The Court will consider each of these claims in turn.

20

Count V asserts  a claim that the loan provided by Defendants was unconscionable. Specifically, Plaintiffs allege that "[t]he defendants . . . imposed excessive fees and costs and overly onerous loan terms.  This includes but is not limited to the additional interest payments the plaintiffs have made and may be required to make in the future and the closing costs to enter loans that these consumers did not understand and were defaulted into."  Compl. ¶ 90.

Under New Jersey law, a contract is considered to be unconscionable if enforcement of its terms is manifestly unfair.  Howard v. Diolosa, 241 N.J. Super 222, 230 (App. Div. 1990).   A party raising a claim of unconscionability has the burden of showing "some over-reaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the terms of the contract that no reasonable man not acting under compulsion or out of necessity would accept them." Rotwein v. Gen. Accident Group, 103 N.J.Super. 406, 418 (Law Div.1968).  Hence, a party needs to demonstrate both procedural unconscionability which identifies unfairness in the formation of the contract and substantive unconscionability which addresses disproportionate contract terms.  Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 564 (Ch.Div.2002).  Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.  Id. To establish substantive unconscionability, a party must show the "exchange of obligations so one-sided as to shock the court's conscience."  Id. at 565.

To the extent that Plaintiffs assert unconscionability in relation to the execution of their mortgage contract with Wachovia, Plaintiffs have not adequately plead their claim.  In terms of procedural unconscionability, Plaintiffs were provided with all the necessary documentation and

21

information regarding their loan at the closing and all such terms, if read, were clear on the face of such documents.  Further, Plaintiffs were given the opportunity to have counsel present during the execution of these documents and to ask questions of the closing agent.  Hence, there are not sufficient allegations plead of overreaching or manipulation in the formation of this contract.  Additionally, there are no allegations of substantive unconscionability, and there are no allegations that the terms of the agreement were not so one-sided or unfair so as to shock the conscious of the court particularly in light of the fact that Plaintiffs voluntarily entered into this transaction and were able to seek out another arrangement if desired.  Therefore, the Court will dismiss Plaintiffs' unconscionability claim against Wachovia.

Moreover, to the extent that Plaintiff alleges unconscionability in relation to the other Defendants, Plaintiffs have not identified any transaction or interaction between themselves and Market Yard, Frankel or Giant Title that could sustain a claim of unconscionability.  Indeed, the language of Count V suggests that Plaintiffs brought this claim only against Wachovia.  Compl. ¶ 90 ("The defendants. . . imposed excessive fees and costs and overly onerous loan terms.")  Thus, Plaintiffs have entirely failed to establish an issue of material fact concerning their claim of unconscionability against Market Yard, Frankel or Giant Title and the Court will grant summary judgment in favor of these Defendants on Plaintiffs' unconscionability claim.

Counts VI and X set forth claims based in negligence.  Specifically, Count VI alleges negligent supervision and that Defendants failed to "review . . . the transactions to ensure" compliance with federal and state law.  Compl. ¶¶ 96, 97.  As a result of Defendants' alleged negligence, Plaintiffs allegedly suffered "emotional distress, mental anguish and suffering, and have. . .incur[ed] medical costs related to treatment therefore [sic]."  Id. 98.  In addition, Count X

similarly alleges that Defendants are liable under a "respondeat superior theory" for any acts or omissions of the settlement agents. Id. at 114.   The Court does not agree.

To establish a claim of negligence in New Jersey, "there must be a finding that the defendant owed some duty to the party complaining and a breach of that duty." Globe Motor Car v. First Fidelity, 273 N.J. Super. 388, 393 (Law Div. 1993), aff'd, 291 N.J. Super. 428 (App. Div.).   In New Jersey, it is well-established that a bank does not owe a legal duty to a borrower. United Jersey Bank v. Kensey, 306 N.J. Super. 540, 557 (App. Div. 1997).  Here, Plaintiffs have failed to plead any legal duty owed to them by Wachovia Mortgage.  Thus, Plaintiffs have failed to state a negligence claims against Wachovia.

Moreover, to the extent that Plaintiffs allege that Market Yard, Frankel or Giant Title were somehow negligent, Plaintiffs have failed to allege facts to establish that these Defendants owed them a duty or that such a duty was breached and resulted in damages.  Moreover, Plaintiffs have failed to respond whatsoever to these Defendants' motions on Plaintiffs' negligence claim.  Indeed, Plaintiffs' sole argument in support of their negligence claim is that "the Galaydas have made various allegations against Wachovia.  Thus, Wachovia owed a duty to the Galaydas at the time of the issuance of the loan. . ." Pl's Br. § IX.   Thus, Plaintiffs have waived this cause of action with response to Market Yard, Frankel or Giant Title.  See, e.g., Duran v. Equifirst Corp., Civil Action No. 2:09-cv-03856, 2010 WL 936199, at *3 (March 12, 2010); Griglak v. CTX Mortg. Co., LLC, Civil Action No. 09-5247, 2010 WL 1424023 (D.N.J. April 8, 2010)("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.")[5]

_____

[5]  The Court notes that the economic loss doctrine provides an additional and independent basis for dismissing Plaintiffs' tort claims against Defendants.  See Rivera v. Washington Mut. Bank,

23

Moreover, to the extent that Plaintiffs have alleged claims of respondeat superior to hold Defendants liable for the negligence of its employees, Plaintiffs have alleged no facts to demonstrate that any employees of any of the Defendants committed any negligent acts.   Indeed, an employer can be held liable under a theory of respondeat superior "if, at the time of the occurrence, the employee was acting within the scope of his or her employment. . . [t]o establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment."  Here, Plaintiffs have failed to allege any facts to demonstrate that any employees of any of the Defendants engaged in any tortious act let alone that those acts occurred within the scope of employment.  Thus, Count X fails as to all Defendants.

In Count VII, Plaintiffs set forth a claim for unjust enrichment.   Unjust enrichment is a theory of quasi-contractual recovery.  Suburban Transfer Serv. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983).   Recovery on a quasi-contract basis provides a remedy where no contract exists.  Callan v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 110  (App. Div.

---

637 F. Supp. 2d 256, 269 and n. 24 (D.N.J. 2009)(JEI).  In Rivera, the court dismissed a mortgagor's claims against a lender for emotional distress arising out of the lender's alleged breaches of a mortgage contract.  Id.  There, the court explained that "with regard to Plaintiffs' argument that Countrywide's actions caused emotional distress, it is axiomatic that a plaintiff may not recover for emotional distress caused by a defendants' alleged breach of contract;  such a proposition lies at the heart of the economic loss doctrine. Countrywide owed no independent duty to Plaintiffs. Accordingly, the negligence claim against Countrywide will be dismissed." Id. (citing Restatement (Second) of Contracts § 353 and comment a ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.... Damages for emotional disturbance are not ordinarily allowed.")).  As in Rivera, Plaintiffs here have failed to allege that the breach of the contract caused physical harm or that Defendants' alleged breach of their mortgage was particularly likely to result in emotional distress.  Thus, the Court finds that the economic loss doctrine bars Plaintiffs' negligence claim.

1966).   Indeed, in New Jersey, an unjust enrichment claim will not lie when there is an express

contract governing the rights and obligations of the parties.  See Moser v. Milner Hotels, Inc.,  6

N.J. 278, 280 (1951).  Indeed, "recovery based on a quasi-contract theory is mutually exclusive

of a recovery based on contract theory."  Duffy v. Charles Schwab & Co., Inc., 123 F.Supp. 2d

802, 814 (D.N.J. 2000).  In the instant matter, the Loan agreement governed the rights and

obligations between Plaintiffs and Wachovia.  Thus, Plaintiffs cannot sustain a claim for unjust

enrichment against Wachovia.

However, even if Plaintiffs could sustain a claim for unjust enrichment against Wachovia,

Plaintiffs have failed to allege any facts in support of this cause of action.  In executing their

mortgage, Plaintiffs were provided with a loan with set terms.  As such, Plaintiffs have received

the benefit for which they bargained and were required to pay the agreed upon payments.

Likewise, Wachovia is entitled to receive the agreed upon terms and fees and have not been

unjustly enriched since contractually, they were entitled to such payments.   Thus, the Court will

dismiss this claim against Wachovia.

Moreover, to the extent that Plaintiffs assert a claim of unjust enrichment against the

other Defendants, Plaintiffs have alleged no facts to satisfy such a claim.  Indeed, "to establish

unjust enrichment, a plaintiff must show both that defendant received a benefit and retention of

that benefit without payment would be unjust."  VRG Corp. v. GKN Realty Corp., 135 N.J. 539,

554 (1994).  Here, Plaintiffs have not alleged that Market Yard, Frankel or Giant Title received

or retained any benefit nor that such a benefit was unjust.  To the contrary, in his affidavit,

Frankel states that he gave Plaintiffs $15,000 "out of [his] funds. . .which they could use for their

construction costs."  Frankel Aff., 12.   Thus, it appears that Plaintiffs received a benefit from

25

Frankel and not the other way around.  For these reasons, the Court grants summary judgment to Market Yard, Frankel and Giant Title on Plaintiffs' claim for unjust enrichment.

In Count VIII, Plaintiffs set forth a claim for breach of contract.  Specifically, Plaintiffs allege that Defendants told them "that their monthly payments would be lower than the actual payments required under the loan terms" and that because "plaintiffs did not receive the agreed upon terms promised by defendants . . . the contract was breached."  Compl. ¶¶ 103, 104.   The Court does not agree.

To state a claim for breach of contract, a plaintiff has the burden of showing that: (1) the parties entered into a valid contract; (2) defendant failed to perform his obligations under the contract; and (3) that plaintiff sustained damages as a result of the breach.  Murphy v. Implicito, N.J. Super. 245, 265 (2007); Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002).   Initially, the Court notes that to the extent Plaintiffs allege a breach of contract claim against Market Yard, Frankel or Giant Title, Plaintiffs have failed to allege the existence of a contract with these Defendants,  thus the Court grants summary judgment to Market Yard, Frankel and Giant Title on Plaintiffs' breach of contract claim.

Moreover, to the extent that Plaintiffs allege a breach of contract cause of action against Wachovia arising out of their mortgage, Plaintiffs have failed to allege any facts to demonstrate that Wachovia breached the mortgage agreement.  To the contrary, Plaintiffs acknowledged that their initial monthly mortgage payment would be $3,154.58 with $1,980.10 applied to the mortgage and $1,174.39 to be deposited in an escrow account.  Lavery Cert., Exs. L & M. Plaintiffs have not alleged any facts to support the argument that they did not receive a mortgage consistent with these terms.

26

Further, to the extent that Plaintiffs are somehow alleging that Defendants made statements to Plaintiffs that would contradict the terms of the mortgage contract, such a claim is barred by the parol evidence rule which "prohibit[s] the introduction of oral promises to alter or vary an integrated written instrument."  Filmlife Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super 570, 573 (App. Div. 1991).   Moreover, to the extent that Plaintiffs suggest that the Court admit extrinsic evidence in this matter because "Wachovia fraudulently induced them into mortgage loans they would not have otherwise entered into but for the defendant's misrepresentations," Pl's Br. § VII,  the Court notes that Plaintiffs have not identified a single statement  made by Wachovia to the Plaintiffs, let alone any misrepresentations made by Wachovia to the Plaintiffs to induce them to enter the mortgage loan.  Thus, Plaintiffs have failed to state a breach of contract claim against Wachovia.

Relatedly, in Count XII, Plaintiffs contend that Defendants breached the covenant of good faith and fair dealing.  It is axiomatic that a claim for the breach of the covenant of good faith and fair dealing arises out of the contract itself.   See Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (N.J. 2001)("A covenant of good faith and fair dealing is implied in every contract in New Jersey . . . Implied covenants are as effective components of an agreement as those covenants that are express . . . Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term.")(citations omitted).   In New Jersey, the covenant of good faith and fair dealing means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Sons of Thunder, 148 N.J. at 420  and full cite).

27

Initially, the Court notes that to the extent Plaintiffs allege a cause of action for the breach of the covenant of good faith and fair dealing against Market Yard, Frankel or Giant Title, Plaintiffs have failed to allege the existence of a contract that would give rise to such a claim. Thus, Count XII fails as a matter of law with regards to these Defendants.

Moreover, to the extent that Plaintiffs allege that Wachovia breached the covenant of good faith and fair dealing arising out of the mortgage agreement, Plaintiffs have failed to identify any acts by Wachovia that constitute either a breach of the mortgage contract or the implied covenant of good faith and fair dealing.   Indeed, the record demonstrates that Plaintiffs agreed to and received a mortgage loan from Wachovia in the amount of $455,000 at an initial interest rate of 7.55% and that Plaintiffs subsequently defaulted on the loan.   Plaintiffs have alleged no facts to demonstrate that Wachovia failed to comply with any contractual obligations whatsoever, let alone in any manner contrary to the terms of the Loan agreement.   Thus, the Court will dismiss Count XII as to Wachovia.

Finally, Count XI sets forth a claim for breach of fiduciary duty.  Specifically, Plaintiffs allege, without any specific factual support, that Defendants breached a fiduciary duty owed to Plaintiffs which caused damage to the Plaintiffs.  Compl. 115-118.   The Court does not agree.

Initially, with regards to the assertion that Wachovia, as a mortgage lender, breached its fiduciary duty to Plaintiffs, the Court notes that "[c]reditor-debtor relationships ... rarely are found to give rise to a fiduciary duty." Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3d Cir.1988) (citing Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 122 (2d Cir.1984)); United Jersey Bank v. Kensey, 306 N.J.Super. 540, 552, 704 A.2d 38 (App.Div.1997) (finding virtual unanimity amongst state jurisdictions that no fiduciary

28

relationship exists between a bank and its customers).  To that end, the presumption that there is

no fiduciary duty between a borrower and a lender has been universally embraced by New Jersey

courts.  See, e.g., Margulies v. Chase Manhattan Mortgage Corp., 2005 WL 2923580, at *3

(N.J.App.Div. Nov. 7, 2005) (affirming superior court's decision that garden variety financing

and refinancing between a bank and its customer, without more, does not give rise to a fiduciary

duty); United Jersey Bank, 306 N.J.Super. at 552, 704 A.2d 38; Globe Motor Car Co. v. First

Fidelity Bank, N.A., 273 N.J.Super. 388, 393, 641 A.2d 1136 (Law Div.1993).  It would be, as

other courts have noted, antithetical to the often adversarial and contentious nature of the

borrower-lender relationship to impose a fiduciary duty on the lender.  See Paradise Hotel, 842

F.2d at 53 (internal quotations and citation omitted) (holding it "would be anomalous to require a

lender to act as a fiduciary for interests on the opposite side of the negotiating table").

      Here, bald assertions that a duty was owed will not carry the day.  Plaintiffs do not

identify any exceptional facts, or case law for that matter, that would support taking their breach

of fiduciary duty claim out of the realm of those in which courts have consistently declined to

impose a fiduciary duty upon a lender.  Indeed, nothing in the Complaint suggests that

Defendants were acting in any other interest than their own when they consummated the

refinance agreement. See United Jersey Bank, 306 N.J.Super. at 552, 704 A.2d 38 (finding no

sound basis to depart from the general rule). Without allegations to that effect, such as an explicit

understanding between Defendants and Plaintiffs that Defendants and their agents were acting

and giving advice for the benefit of Plaintiffs, Plaintiffs' Complaint cannot overcome the heavy

presumption that a lender-borrower arrangement is not ordinarily a special relationship subject to

a fiduciary duty. Accordingly, the Court dismisses Plaintiffs' breach of fiduciary duty claim against Wachovia.

Further, to the extent that Plaintiffs allege a breach of fiduciary duty claim against Market Yard, Frankel or Giant Title, the Court notes that Plaintiffs have failed to allege facts to establish the existence of a fiduciary relationship with these Defendants or that these Defendants somehow breached a fiduciary duty to them.  Moreover, Plaintiffs have failed to respond whatsoever to these Defendants' motions on the breach of fiduciary duty claim.  Indeed, instead, Plaintiffs' brief states that "it is undisputed that the Galaydas had a fiduciary relationship with the lender, Wachovia."  Pl's Br. §8(B).   Thus, Plaintiffs have waived their cause of action for breach of fiduciary duty as to Market Yard, Frankel or Giant Title.  See, e.g., Duran v. Equifirst Corp., Civil Action No. 2:09-cv-03856, 2010 WL 936199, at *3 (March 12, 2010); Griglak v. CTX Mortg. Co., LLC, Civil Action No. 09-5247, 2010 WL 1424023 (D.N.J. April 8, 2010)("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.")

IV.   **CONCLUSION**

For the foregoing reasons, all claims are dismissed against all parties.[6]  An appropriate Order shall follow.

---

[6]In addition, the Court notes that Plaintiffs' execution of the General Release on May 22, 2008 provides an alternative basis for the dismissal of all claims against Market Yard and Frankel. See, e.g., Raroha v. Earle Finance Corp., 47 N.J. 229, 234 (1966)("[I[n the absence of fraud, misrepresentation or overreaching by the releasee, in the absence of a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the release is binding and that the releasor will be held to the terms of the bargain he willingly and knowingly entered.")

Dated: December 22, 2010                          /s/ Freda L. Wolfson
                                                  Freda L. Wolfson, U.S.D.J.